CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 15 2006

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:06CR00004-2 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CRAIG ROHAN ANDERSON, | ) | |
| a/k/a "Stigger," | ) | |
| a/k/a "Sticker," | ) | |
| a/k/a "Chauffeur," | ) | |
| | ) | By:  B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Superseding Indictment charging defendant in Count One with knowingly combining, conspiring, confederating, and agreeing with his codefendants and other persons, both known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with the intent to distribute, 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as "crack" cocaine, a Schedule II controlled substance; and to distribute and to possess with intent to distribute a mixture or substances containing a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a), all in violation of Title 21, United States Code, Section 846; and in Count Two with knowingly and intentionally possessing with intent to distribute 5 grams or more of a mixture or substance containing cocaine base, also known as "crack" cocaine, a Schedule II controlled substance, all in violation of Title 21, United

States Code, Sections 841(a)(1) and 841(b)(1)(B).

On September 11, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count Two of the Superseding Indictment. The government has agreed to dismiss Count One of the Superseding Indictment upon acceptance of plaintiff's guilty plea.

At this hearing the defendant was placed under oath and testified that his full legal name is Craig Rohan Anderson, that he was born on May 31, 1978, and that he graduated from high school. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that he had received a copy of the Superseding Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged in Count Two is a felony, and that if his plea is accepted, he will be adjudged guilty of that offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100, and that, at the discretion

2

of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Count Two, including any facts related to sentencing. The defendant further testified that he knew that the government retained the right to appeal any sentence the court imposed that was below the applicable sentencing guideline range or below the government's recommended sentence. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was also informed that Count One has a mandatory minimum sentence of ten years imprisonment. The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count Two is forty years imprisonment and a fine of $2,000,000, together with supervised release. The defendant was further informed that Count Two has a mandatory minimum sentence of five years imprisonment.

3

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant testified he knew that pursuant to USSG § 1B1.3 he is accountable for more than 150 grams but less than 500 grams of mixtures and substances containing cocaine base. The defendant stated that he understood that the government would not object to him being given the benefit of sentencing under the "safety valve" provisions of USSG § 5C1.2 and Title 18, United States Code, Section 3553, if he continues to meet the criteria up to and including the time of his sentencing. The defendant was informed that the government will recommend that he receive a sentence of incarceration at the low end of the applicable sentencing guidelines range and that the government will object to any motion for downward departure that he might make. Defendant stated

4

he understood that the location for service of any term of imprisonment is ultimately determined by the Bureau of Prisons, but to the extent it is consistent with the Bureau of Prisons' applicable rules and regulations, the government would not object to any request he might make to be confined at a community correctional facility.

The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;

7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea. The defendant asked the court to accept his plea of guilty to Count Two of the Superseding Indictment.

## THE GOVERNMENT'S EVIDENCE

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary.[1] The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

Craig Rohan Anderson, did knowingly distribute, or possess with the intent to distribute 5 grams or more of a mixture or substance containing a detectable amount of cocaine base.

Craig R. Anderson was a member of a drug conspiracy which operated throughout the Charlottesville, Virginia region from the late 1990's through 2006. The conspiracy operated primarily in the Rougemont area of the city, but was not confined to that neighborhood.

The conspiracy included, among others, the Defendant, Austin Webb, Jr., Christopher Cobourne, Alston Perrin, Stephanie Jones and Ezekiel Williams.

---

[1] Defendant had no objection to the fact that if the government had submitted evidence, the Factual Summary represented the evidence that would have been presented. However, defendant expressed a desire to address some of the facts at sentencing.

6

The Government, at trial, would be able to establish that the Defendant had known Austin Webb, Jr. from their early days in New York. Anderson came to Charlottesville with Webb sometime at the end of 2002 and soon thereafter began selling crack cocaine in the Rougemont area. Other members of the conspiracy, including Alston Perrin, Christopher Cobourne and Ezekiel Williams, also had ties to the New York City area and began selling drugs in the Charlottesville area with Webb soon after their arrival as well.

During the course of the conspiracy, Webb would make frequent trips to New York for the purpose of making purchases of wholesale quantities of cocaine to redistribute in the Charlottesville area. Often times he would purchase cocaine hydrochloride in large quantities, cook it into crack, and package the new substance for distribution on the streets of Charlottesville. Anderson and other members of the conspiracy would assist Webb in the street level distribution of the narcotics. Often times, the co-conspirators, including Anderson, would "work" Webb's phone, which essentially involved the taking of orders for cocaine. Additionally, Anderson got his nickname "Chauffeur" because he often drove Webb around town to make drug transactions. All of the co-conspirators were also involved in the transportation of the cocaine from New York to the Charlottesville area on at least one occasion.

The conspiracy came to the attention of law enforcement in June of 2003, when Austin Webb, Jr. was arrested for assaulting his then girlfriend and co-conspirator, Stephanie Jones. Defendant Anderson and co-conspirator Christopher Cobourne were present at the time of Webb's arrest. During a search of Mr. Webb's person which was conducted incident to his arrest, the Charlottesville Police Department recovered nearly $6000 and a hotel key. The police department ultimately obtained a search warrant for the hotel room associated with the recovered hotel key. In

7

the hotel room the Charlottesville police recovered approximately 40 grams of crack cocaine.

With the discovery of this large quantity of crack cocaine, the Jefferson Area Drug Enforcement Task Force (JADE) began to investigate those involved. Through the use of standard investigative techniques including the use of confidential informants, the JADE Task Force was able to make seven controlled buys from Austin Webb, Jr. or members of his organization. Further, through extensive interviews with multiple sources the JADE task force uncovered a conspiracy which provided a significant source of income for its members through the distribution of cocaine to multiple users.

The Government would be able to establish that the conspiracy, of which Craig Rohan Anderson was a member, was responsible for the distribution of well over 150 grams of cocaine base.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count Two of the Superseding Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

8

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count Two and adjudge him guilty of that offense. A sentencing hearing hereby is scheduled for November 7, 2006 at 10:00 a.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/
United States Magistrate Judge

September 15, 2006
Date

9